EMMA DORRANCE, Appellant, v. JOHN DORRANCE.

In Banc, May 20, 1912.

1. **AMENDED PETITION: Before Answer or Demurrer.** A plaintiff has the right, as of course, to file an amended petition at any time before an answer or a demurrer is filed, and before the return day of summons or other original notice; and if filed before demurrer it supersedes the original petition, and becomes the only pleading to which the demurrer can apply.

2. ———: ———: **Made Part of Record: Filing: Nunc Pro Tunc Entry.** In legal contemplation the presentation and delivery of an amended petition to the clerk is its filing, which dates from its reception by the clerk and lodgment in his office, although his indorsement is the highest legal evidence of that filing; and that indorsement, being merely ministerial, is amendable; and if there is ample evidence, embracing indorsements by the clerk which his testimony shows mean a filing on a certain day, to authorize a *nunc pro tunc* record entry showing a filing on that day, the court's conclusion, directing such entry, is binding on the appellate court; and that filing being on a day preceding the filing of the demurrer, the petition to be considered on appeal from an order sustaining a demurrer to the petition, is the amended petition.

3. **JURISDICTION: Constitutional Question: When Question is Involved: Validity of Divorce Statute.** An appeal by a plaintiff from the ruling of the trial court sustaining defendant's demurrer to her petition, which sets forth, with detail, that the judgment by which defendant obtained a divorce from her was obtained through a fraudulent scheme, by which the court was deceived and induced by false affidavits to assume jurisdiction of a cause of which it could not lawfully take judicial cognizance, and that plaintiff was, by the false swearing and imposition upon the court by defendant, wrongfully and wilfully kept in ignorance of the proceeding, and from having any opportunity

242 Sup.—40

to appear and defend, until the defendant had obtained a final judgment of divorce against her and the term had elapsed at which it was entered, and asserting that such judgment so obtained does not constitute due process of law within the meaning of the State and Federal Constitutions and for this reason plaintiff had the constitutional right to have it annulled, and that if section 2932, Revised Statutes 1909, be so construed and enforced as to protect and uphold it and to prevent its vacation, then said statute operates to deprive her of her property and rights without due process of law, and deprives and denies to her the equal protection of the laws, in contravention of the 14th Amendment, and of section 30 of article 2 of the Constitution of Missouri, is to the Supreme Court, because it involves the construction of the said constitutional provisions.

4. ————: ————: **What Construction Means.** The Constitution of Missouri provides that the Supreme Court shall have exclusive jurisdiction "in cases involving the construction of the Constitution of the United States, or of this State"; and construction signifies determining the meaning and proper effect of language by a consideration of the subject-matter and attendant circumstances in connection with the words employed. Construction does not stop with interpretation, but applies the language as interpreted to both the subject-matter and the attendant circumstances. Jurisdiction is not defeated because on examination it is found the statute is not unconstitutional; if the claim is that the statute which stands in the way of plaintiff's suit is unconstitutional, and that claim is real, and not merely colorable or fictitious, the question of its constitutionality is so lodged in the case as to give the Supreme Court jurisdiction of the appeal.

5. ————: ————: **Divorce: Involves Property Rights.** A marital relation involves a property or contract right, and is protected by those provisions of the Constitution declaring that no person shall be deprived of life, liberty or property without due process of law, and it is within the province of the courts to say whether a statute inhibiting any interference with a judgment for divorce after the adjournment of the term at which it was obtained, however flagrant the fraud upon the court by which it was obtained, conflicts with those constitutional provisions.

6. ————: ————: ————: ————: **Due Process of Law.** A judgment concocted in fraud, rendered in a case in which the court is induced to take jurisdiction by the perjury of the plaintiff, without any notice to a defendant who was entitled to notice, and founded on a claim entirely fictitious, is not due process of law; and a statute which deprives the defendant of relief and every possible remedy against such a judgment is not due process of law.

7. ———: ———: ———: ———: ———: What Is: Purpose of Constitutional Provisions. Due process of law is law which hears before it condemns; which proceeds upon inquiry, and condemns only after trial. The constitutional provisions guaranteeing due process of law were intended to secure the individual from the arbitrary exercise of the powers of government unrestrained by the established principles of private right and distributive justice.

8. DIVORCE: Obtained by Fraud on Court: Review: Sec. 2381, R. S. 1909: Inapplicable Statute. Notwithstanding the statute (Sec. 2381, R. S. 1909) declaring that "no petition for review of any judgment for divorce, rendered in any case arising under this article, shall be allowed, any law or statute to the contrary notwithstanding," a suit may be maintained, in the court in which it was rendered, to set aside and annul a judgment for divorce obtained upon a fictitious cause of action, in a county other than that in which the plaintiff or defendant (resident of the State) resided, upon notice by publication obtained upon plaintiff's affidavit stating that the facts authorizing such publication existed, which statement was knowingly false, and without appearance or knowledge of the proceeding by defendant. A judgment so obtained is a fraud on the court and defendant, and as between the plaintiff and defendant will be held to be null and void in a court of equity, nor does the statute inhibit a suit in equity to set it aside.

9. ———: Not Subject to Review: Statute Inapplicable to Judgment Obtained by Fraud. Section 2381, Revised Statutes 1909, "declaring that no petition for review of any judgment for divorce, rendered in any case arising under this article, shall be allowed, any law or statute to the contrary notwithstanding," is *in pari materia* with the other statutes enacted at the same term of the Legislature relating to petitions for the review of judgments for irregularities and found in the general code, and is an exception to those statutes and applies only to petitions for review of judgments rendered on constructive notice when filed in the original cause, and does not inhibit a separate suit in a court of equity to set aside a judgment for divorce obtained by fraud upon the court and the defendant therein. [Overruling Salisbury v. Salisbury, 92 Mo. 683, so far as it conflicts with this holding.]

### Per WOODSON, J., dissenting. -

1. DIVORCE: Jurisdiction: Plaintiff not Resident of County. A circuit court is a court of general jurisdiction; and when a plaintiff, a resident of one county, brought suit for divorce against his wife in the circuit court of another county, he voluntarily submitted himself to the jurisdiction of that court, and the question of his residence in the latter county is con-

cluded by the decree of divorce rendered by the circuit court therein, and that decree is not void on the ground that he was a resident of another county, but at most only voidable on that ground.

2. ————: ————: **Over Defendant: By Publication: Collateral Attack.** The circuit court acquires jurisdiction over the person of a defendant in a divorce suit duly notified by publication of its institution in the manner prescribed by statute, whether or not the affidavit in support of the petition, to the effect that the defendant had absconded and had concealed herself and her whereabouts was unknown, were true or false; and the judgment rendered in pursuance of said publication is not void, and cannot be set aside in a collateral proceeding.

3. ————: ————: **Order of Publication: Judgment Only Voidable.** An order of publication, made upon an affidavit sufficient under the statute authorizing it and published in the manner prescribed by the statute, though that affidavit be false, is not void, but legal process, and valid for the purpose of bringing defendant into court, whether or not she has any knowledge of it; and a judgment rendered in pursuance of said constructive notice is not void, but only voidable, and cannot be set aside for fraud *aliunde* the record.

4. ————: **Setting Aside Decree by Equity.** The Legislature enacted sections 13 and 14, chapter 55, page 666, R. S. 1855, entitled "Divorce and Alimony," now Secs. 2380 and 2381, R. S. 1909, declaring that "no petition for review of any judgment for divorce shall be allowed, any law or statute notwithstanding," and that "no final judgment" for divorce "shall be reviewed, annulled or modified, in the Supreme or any other court, by appeal or writ of error, unless such appeal shall have been granted during the term . . . or such writ shall have issued within sixty days after the judgment was rendered," for the purpose of correcting the wrong wrought by the decision in Smith v. Smith, 20 Mo. 166, in which it was held that sections 1, 2, 3 and 4, article 6, chapter 137, page 851, Revised Statutes 1845, entitled "Practice in Chancery," made possible a review of a judgment in a divorce case by a motion or petition for review filed therein after the adjournment of the term. The evident purpose of those two sections was to forever preclude the setting aside of a decree for divorce, rendered by the circuit court, after jurisdiction had been acquired in the manner prescribed by statute, whether obtained by false allegations and testimony as to the residence of plaintiff or a false affidavit as to defendant's residence, or any other fraud *dehors* the face of the record, unless defendant moved to have it reviewed either during the term or within sixty days after it was rendered. The said section 2381 excludes any suit in equity to set aside a

Dorrance v. Dorrance.

divorce decree obtained by fraud except fraud on the face of the record. Such a suit in equity, where the court has obtained jurisdiction in the manner prescribed by statute, is clearly a "petition for review," and to allow it would be to write an exception into the statute which the Legislature clearly never intended to make, its intention being to prohibit courts from entertaining petitions for review based on any ground after the lapse of the term at which the decree was rendered, unless an appeal is taken during the term or within sixty days after judgment, except that a court of equity may at any time set aside a decree where the record on its face shows the court had no jurisdiction over the case.

Appeal from St. Louis City Circuit Court.—*Hon. R. M. Foster*, Judge.

REVERSED AND REMANDED.

*Loomis C. Johnson, Horace H. Blanton* and *Joseph Wheless* for appellant.

The court erred in sustaining defendant's demurrer to plaintiff's amended petition. (1) The allegation in the petition filed in the circuit court of the city of St. Louis by John Dorrance for divorce, and supported by his affidavit that he was a resident of St. Louis, was false (he being a resident of Chariton county, Missouri) and fraudulently made for the purpose of inducing the court to assume jurisdiction of that cause; and a court of equity has inherent power to set aside such a judgment. Sec. 2371, R. S. 1909; Lagerholm v. Lagerholm, 133 Mo. App. 306; Stansbury v. Stansbury, 118 Mo. App. 427; Hinkle v. Lovelace, 204 Mo. 208; Irvine v. Leyh, 102 Mo. 129; Smith v. Lewis, 77 Mo. 270; Murphy v. De France, 101 Mo. 151; Wonderly v. County, 150 Mo. 650; Dunlap v. Steere, 16 L. R. A. 361; U. S. v. Throckmorton, 98 U. S. 61. (2) The affidavit made by John Dorrance to the petition filed in the circuit court of St. Louis for divorce, that his wife, Emma Dorrance, had absented herself from her usual place of abode in this State, and that she had concealed herself, so that the ordinary

process of law could not ·be served upon her in this State, was false and was a fraud practiced upon the court to induce it to acquire and assume jurisdiction of the person of Emma Dorrance, defendant in that cause; and for this reason service by publication and the judgment rendered thereon are void. Fitzpatrick v. Stevens, 114 Mo. App. 501; Williams v. Gerber, 75 Mo. App. 30; Perry v. Alford, 5 Mo. 503; Bank v. Ward, 45 Mo. 311; Dorn v. Parsons, 56 Mo. 602; Million v. Ohnsorg, 10 Mo. App. 437; Bick v. Tanzey, 181 Mo. 524; Burnett v. McCluey, 78 Mo. 689; Hargadine v. Van Horn, 72 Mo. 370; Wonderly v. County, 150 Mo. 635; Howard v. Scott, 225 Mo. 685. (3) Fraud practiced upon the court in acquiring jurisdiction of the subject-matter or of the person is universally held to constitute sufficient reason for setting aside and annulling a judgment obtained thereby. Howard v. Scott, 225 Mo. 685; Wonderly v. County, 150 Mo. 635; McDermot v. Gray, 198 Mo. 281; Hamilton v. McLean, 139 Mo. 678; Bates v. Hamilton, 144 Mo. 11; Stave Co. v. County, 121 Mo. 630; Irvine v. Leyh, 102 Mo. 206; Richardson v. Stowe, 102 Mo. 43; Murphy v. De France, 101 Mo. 157; Bradley v. Welsh, 100 Mo. 268; McClanahan v. West, 100 Mo. 320; Payne v. O'Shea, 84 Mo. 138; Mayberry v. McClung, 51 Mo. 256; Downing v. Still, 43 Mo. 309; Harris v. Sanders, 38 Mo. 421; Smoot v. Judd, 161 Mo. 686; Fitzpatrick v. Stevens, 114 Mo. App. 497; Tapana v. Shaffrey, 97 Mo. App. 345; 17 Am. & Eng. Ency. Law (2 Ed.), pp. 825-828; State ex rel. v. Bradley, 193 Mo. 42; Edson v. Edson, 108 Mass. 590; Johnson v. Coleman, 23 Wis. 452; Adams v. Adams, 51 N. H. 399. (4) Secs. 2380 and 2381 do not apply to a judgment or decree of divorce concocted in fraud or to cases where there has been no service on the defendant. There is no difference in principle between a proceeding to set aside a decree of divorce obtained by fraud or any other judgment or decree. Irvine v. Leyh, 102 Mo. 209; Cole v. Cole, 3 Mo. App.

571; Richardson v. Stowe, 102 Mo. 33; Nave v. Nave, 28 Mo. App. 515; Rine v. Hodgson, 9 Oh. Dec. Rep. 275; Stewart v. Stewart, 141 S. W. (Ark.) 193; Earl v. Earl, 91 Ind. 27; Caswell v. Caswell, 120 Ill. 377; Sloan v. Sloan, 102 Ill. 581; Evans v. Woodsworth, 213 Ill. 407; Fritz v. Fritz, 6 Oh. (N. P.) 258; Edson v. Edson, 108 Mass. 591; Zeitlin v. Zeitlin, 202 Mass. 205; Brown v. Grove, 116 Ind. 84; Willman v. Willman, 57 Ind. 500; Daniels v. Benedict, 50 Fed. 347; Cheney v. Bryan, 15 Lea, 589; Newcomb v. Newcomb, 13 Bush, 544; Clayton v. Clayton, 4 Colo. 410; Cheely v. Cheely, 110 U. S. 701; Stanton v. Crosby, 9 Hun, 370; Peterson v. Peterson, 6 W. N. C. 449; Ins. Co.'s App., 93 Pa. 242; Smith v. Smith, 3 Phila. 489; Boyd's App., 38 Pa. 241; Johnson v. Coleman, 23 Wis. 452; Everett v. Everett, 60 Wis. 200. (a) The decisions of this court in the case of Salisbury v. Salisbury, 92 Mo. 683, and of the St. Louis Court of Appeals in Childs v. Childs, 11 Mo. App. 395, are not applicable to this case. In neither of these cases was the jurisdiction of the court rendering the decree questioned. As is shown by the petition in the case at bar, and admitted by the demurrer, the lower court in the divorce suit of Dorrance v. Dorrance had jurisdiction over the person of neither of the parties thereto, and hence could not have had jurisdiction to render a decree therein. Its decree was therefore coram non judice and void. Cole v. Cole, 3 Mo. App. 571; Mansfield v. Mansfield, 26 Mo. 165; Irvine v. Leyh, 102 Mo. 209. (b) The extreme doctrine enunciated in the Salisbury case and the strict construction of sec. 2381, Revised Statutes 1909, therein upheld, has been distinctly modified, if not indeed overruled, by a later decision of this court. Richardson v. Stowe, 102 Mo. 43. (c) The doctrine enunciated in the cases of Parrish v. Parrish, 9 Oh. St. 534, and Greene v. Greene 2 Gray, 361, cited and to an extent relied upon in support of the decision of this court in the Salisbury case, has been repudiated or at least greatly

modified and restricted by the Supreme Courts of Ohio and Massachusetts, respectively. Rine v. Hodgson, 9 Oh. Dec. Rep. 275; Fritz v. Fritz, 6 Oh. (N. P.) 258; Edson v. Edson, 108 Mass. 591; Zeitlin v. Zeitlin, 202 Mass. 205. (5) If secs. 2380 and 2381 are construed to preclude a proceeding to set aside a decree of divorce obtained without service, or concocted in or procured by fraud, appellant is deprived of her property rights as the wife of respondent without due process of law, and said sections are therefore in contravention of the Fourteenth Amendment of the Constitution of the United States and of sec. 30 of article 2 of the Missouri Constitution. Hunt v. Searcy, 107 Mo. 158; Roth v. Gabbert, 123 Mo. 29; Hennig v. Staed, 138 Mo. 434; State v. Loomis, 115 Mo. 312; Jones v. Yore, 142 Mo. 38; State v. Julow, 129 Mo. 174; Scott v. McNeal, 154 U. S. 34; Virginia v. Rives, 100 U. S. 318; Pennoyer v. Neff, 95 U. S. 727; Simon v. Craft, 182 U. S. 427. (6) The petition alleges that the notice pubished under the order of publication failed to set out and state the causes of action or grounds of divorce. It therefore appears, and is admitted under the demurrer, that the circuit court failed to gain jurisdiction over the defendant. "A notice which falls short in any essential particular of apprising the defendant of the object and general nature of the suit commenced will not be sufficient to authorize a judgment against him." Bobb v. Woodword, 42 Mo. 489; McKelvey v. Wonderly, 26 Mo. App. 632; Wimingham v. Trueblood, 149 Mo. 585; Lumber Co. v. Schuler, 49 Mo. App. 96; Cloud v. Inhabitants, 86 Mo. 366; Lonkey v. Mining Co., 17 L. R. A. 352. Defendant not having been summoned in accordance with the statutory provisions by the decree in the divorce case, has been denied her day in court. Therefore, if the provisions of sections 2380 and 2381 are held to preclude action in this case, they are unconstitutional as depriving the defendant of her property without due process of law, in contravention of the

. terms of the Fourteenth Amendment to the Federal Constitution and of section 30, article 2 of the State Constitution. Cloud v. Inhabitants, 86 Mo. 366; Railroad v. Schidt, 44 L. Ed. 747; Scott v. McNeal, 38 L. Ed. 901; Pryor v. Downey, 50 Cal. 388; Talpin v. Page, 21 L. Ed. 96.

*C. Orrick Bishop, Chilton Atkinson* and *Bates, Blodgett, Williams & Davis* for respondent.

(1) The Missouri decisions settle every proposition urged by the appellant. Smith v. Smith, 20 Mo. 170; DeGraw v. DeGraw, 7 Mo. App. 131; Childs v. Childs, 11 Mo. App. 395; Salisbury v. Salisbury, 92 Mo. 683; Nave v. Nave, 28 Mo. App. 505; Hansford v. Hansford, 34 Mo. App. 262; Richardson v. Stowe, 102 Mo. 44; Smith v. Smith, 48 Mo. App. 612; Cole v. Cole, 89 Mo. App. 231. (2) The order of publication was sufficient. McDermott v. Gray, 198 Mo. 283. (3) The wrong remedy has been chosen. 2 Bishop on Mar. and Div., sec. 556; DeGraw v. DeGraw, 7 Mo. App. 126. (4) The point as to jurisdiction is included in and concluded by the judgment. Hansford v. Hansford, 34 Mo. App. 270; Springfield v. Whitlock, 34 Mo. App. 648. (5) Section 2381, Revised Statutes 1909, is constitutional and valid. Parrish v. Parrish, 9 Ohio St. 534; Tappin v. Tappin, 6 Ohio St. 64. (6) Section 2381, Revised Statutes 1909, applies to and bars the plaintiff in this case. Salisbury v. Salisbury, 92 Mo. 683; Childs v. Childs, 11 Mo. App. 395; Nave v. Nave, 28 Mo. App. 505; Hansford v. Hansford, 34 Mo. App. 262; Richardson v. Stowe, 102 Mo. 44; Smith v. Smith, 48 Mo. App. 612; Cole v. Cole, 89 Mo. App. 231; Smith v. Smith, 20 Mo. 170; McGraw v. McGraw, 7 Mo. App. 131. (7) The Constitution does not prohibit the Legislature from denying review or question of a decision of the court by proceeding in equity or otherwise. State v. Loomis, 115 Mo. 312; Railroad v. Lowder, 138 Mo. 533; Johnson v. Railroad, 141 U. S. 611; Stevens v.

Delavaulx, 166 Mo. 20; Sprekles v. Refining Co., 117 Cal. 377; Pittsburg v. Backus, 154 U. S. 426. (8) Divorce is a purely statutory proceeding and subject to statutory regulation. In re Kinsolving, 135 Mo. App. 640; Sharp v. Sharp, 134 Mo. App. 280. (9) The rules governing cases involving property rights are not applicable to divorce cases. Hinckle v. Lovelace, 204 Mo. 223; Mangels v. Mangels, 6 Mo. App. 484. (10) Marriage is far more than a civil contract—it is a status, an institution. The Legislature of every State has the constitutional power to regulate the formation and dissolution of the marriage relation, so far as regards its own citizens. Haddock v. Haddock, 201 U. S. 569; Maynard v. Hill, 125 U. S. 190; 10 Am. & Eng. Ency. Law (2 Ed.), p. 145; Randall v. Krieger, 23 Wall. 148; Chouteau v. Railroad, 122 Mo. 394; Gould v. Crow, 57 Mo. 200; Johnson v. Johnson, 45 Mo. 599; Adams v. Palmer, 51 Me. 481; Tiffany on Domestic Relations (2 Ed.), p. 7; Wade v. Kalbfleisch, 58 N. Y. 284; McGuire v. McGuire, 7 Dana (Ky.) 183; Spencer on Domestic Relations, p. 33; Bishop on Marriage, Div. and Sep. (1891), sec. 13. (11) Even if the marriage relation be denominated a civil contract, still the Legislature has power to regulate all marriages occurring subsequent to the time of the enactment of regulating statutes. Authorities supra. (12) A suit of divorce is one *in rem* or *quasi in rem,* and where the court has jurisdiction, a decree of divorce is binding on all the world. Gould v. Crow, 57 Mo. 200; McDermott v. Gray, 198 Mo. 283. (13) Publication of notice was sufficient without setting out the grounds for divorce as stated in the petition. Friedman v. Thompson, 53 Mo. 189; Sloan v. Forse, 11 Mo. 29; Adams v. Cowles, 95 Mo. 506. (14) The question as to whether the defendant in a divorce suit had concealed herself so that ordinary process of law could not be served upon her, so as to justify publication of notice to her, and the question whether the plaintiff was a resident of the city

of St. Louis can no more be raised in this proceeding than can any other question passed upon by the court in that divorce suit, and there is no distinction in this regard between cases where jurisdiction of the person was acquired by personal service and those where it was acquired by publication of notice. The court has jurisdiction in both cases and its judgments, except as otherwise provided by statute, are equally binding. Payne v. Lott, 90 Mo. 676; State ex rel. v. Clarkson, 88 Mo. App. 559; Jones v. Driscoll, 94 Mo. 199; Cowdy v. Wamball, 110 Mo. 284; Polk v. Blair, 105 Mo. 93; Dowell v. Applegate, 152 U. S. 340.

BROWN, C.—There are two appeals in this case. The plaintiff appeals from the final judgment of the circuit court dismissing her petition upon her refusal to plead further after a general demurrer had been sustained. The defendant afterwards appealed, during the pendency of the case in this court, from an order of the trial court entering upon its records a statement *nunc pro tunc* in said cause as follows: "Amended petition filed May 17, 1907."

The second appeal being for the purpose of enabling the court to judge of the true state of the record, it is plain that they should both be tried together, and it has been so ordered.

The case is a suit in equity to set aside a decree of divorce in the circuit court of the city of St. Louis in favor of this respondent and against the appellant. It was instituted by the filing of the petition in the St. Louis Circuit Court on April 27, 1907, returnable at the succeeding June term, to which the defendant entered his appearance by stipulation, dated May 3, 1907.

The original petition contained no mention of the Constitution of the State of Missouri, or of the United States.

The *nunc pro tunc* entry set out above, refers to the amended petition copied in the appellant's ab-

stract, and which the appellant claims, and the court found, was filed in the office of the clerk on the day mentioned in the order.

On the hearing of the motion asking for the entry *nunc pro tunc,* Mr. Alexander M. Lewis, the chief deputy clerk of the St. Louis Circuit Court, was called and asked to identify certain entries and marks on the back of the amended petition, and stated that he placed thereon the following: "254 Series A, June term, 1907, Div. 9;" that this was done on or before the Saturday which was the last day for the filing of suits for the June term, and indicated, according to his uniform method, that the cause at that time was assigned by him to division 9 of the court. He also stated that the figures 45794, the serial number of the case must, in accordance with such method, had been placed by him on the pleading as early as the week before the first day of the June term.

The following entry, about the genuineness of which no question has been suggested, also appears on the back of this pleading: "Copy received this 17th day of May, 1907." (Signed) "Martin A. Seward, C. B. Crawley, Attorneys for defendant." These are the same attorneys who entered defendant's appearance, and Mr. Seward signed the demurrer, from the action of the court upon which the appeal was taken.

The amended petition states, in substance, that the plaintiff is, and was at all times mentioned in it, the wife of the defendant, who on or about May 25, 1906, and during the April term, filed in the circuit court for the city of St. Louis a suit for divorce against plaintiff, returnable to the October term, 1906, in which it was alleged, as grounds for divorce, that the plaintiff had, for the space of one year, absented herself from him without reasonable cause; that she had offered him such indignities as to render his condition intolerable; and that at the time of her marriage with him she was, and still remained, impotent.

That on the first day of June, 1906, and at the April term of said court, he presented to the judge of Division Nine his affidavit, wherein it was alleged that plaintiff had absconded from her usual place of abode, and that although he had diligently sought to locate her he was unable to do so, or to learn her whereabouts, and that she had concealed herself so that the ordinary process of law could not be served on her in this State, and praying an order that notice of the suit be given by publication. That each recital of said affidavit was false; that plaintiff had not absconded or concealed herself, and that her actual residence and address, which was in the city of Kansas City, State of Missouri, was at the time well known to him; that he, for the purpose of attempting to secure a decree of divorce from her without her knowledge, so that she would not have the opportunity to appear and defend, and defeat the said suit, and for the purpose of falsely and fraudulently conferring a pretended jurisdiction on said court over her person, falsely and willingly made the said affidavit, knowing that the same was a fraud on the court, and on this plaintiff and her most sacred rights.

That the judge of court was deceived by said false affidavit, and, on the last named date, made an order directing that notice of the suit be given by publication in a newspaper published in the city of St. Louis; that a publication purporting to be the order of the court was published four times in the "Star-Chronicle," but said publication was not a lawful notice to plaintiff of the bringing of said suit, because it was based on said false affidavit; because said publication was preceded by a statement that the order was made at the June term, whereas it was in fact made at the April term; and because it failed to set out the grounds of divorce alleged in the petition, and was therefore insufficient to confer jurisdiction on the court.

That afterward, on the 8th day of October, 1906, and at the October term, default was entered against her, and the cause set for hearing ex parte; that she was in entire ignorance of the fact that such suit had been brought, or that such publication had been made; that on or about the 9th day of November, 1906, a final decree purporting to dissolve the marriage and restore him to all the rights of an unmarried man was entered by said court; and that she had neither lawful notice nor actual knowledge of the pendency of said divorce suit, nor of the granting of said decree of divorce, until about the 10th day of April, 1907, long after the term at which the same was rendered had elapsed.

That this defendant, the plaintiff in said suit, was not, at the time of filing said suit, nor at any other time, a *bona fide* resident of the city of St. Louis, but was then and ever since, a resident of Chariton county, Missouri; and the averment in his petition that he was a resident of the city of St. Louis was falsely and fraudulently made, in order to give a colorable jurisdiction to this court, which could not acquire jurisdiction of said cause as against this plaintiff, who was also not a resident of said city, but resided at the time in Kansas City, Jackson county, Missouri. That the alleged grounds of divorce set up in said petition are, as defendant well knows, each and every one untrue in substance and in fact, and that she has actual disproof of the same, and a just and sufficient defence to the pretended cause of action.

The petition then pleads that the notice set forth and proceedings under the same do not constitute due process of law, and that "section 2932 of the Revised Statutes of Missouri of 1899, purporting to prohibit the review or vacating of any decree of divorce after the term of court at which the same was rendered, is not applicable to a void decree rendered without jurisdiction of the cause of action and of the person of the defendant or upon an assumption of jurisdiction falsely

and fraudulently obtained, as in the case of the decree sought to be avoided; but plaintiff avers that if said statute is so to be construed as to apply to the decree purporting to be rendered against plaintiff as defendant in said cause, then said statute is unconstitutional and void, in that it operates to deprive this plaintiff of her civil and property rights as the lawful wife of the said John Dorrance without due process of law and denies to her the equal protection of the law in contravention of the 14th Amendment of the Constitution of the United States and of section 30 of article 2 of the Constitution of the State of Missouri.''

That the decree is further fraudulent and void and subject to be avoided in this action, because the several charges and allegations in the petition, and the evidence adduced at the hearing, are false and fraudulent in the following particulars: that the allegation and testimony that the plaintiff therein was a resident of the city of St. Louis, was false, and made solely to defraud this court into assuming jurisdiction, whereas he at all times resided near Keytesville, Chariton county, Missouri. That the allegation and testimony that he faithfully demeaned himself, and discharged all his duties to this plaintiff, and treated her with kindness and affection, are wholly false, because for several years prior, he had, without plaintiff's knowledge, lived in open and notorious adultery with a negro woman named Lena Robertson, whom he maintained in a house built for her on a farm belonging to plaintiff, and once, in the absence of plaintiff, installed her in the family home, and at the time he was pretending to reside in St. Louis while said divorce case was pending he lived with said negro woman and her two children in a house which he provided for her at No. 830 Nebraska Avenue, Kansas City, Kansas, to the great scandal of the respective neighborhoods. That during the summer of 1905, pretending to plaintiff that he was going to the Indian Territory on business,

he went, instead, to London, England, where he represented to a young English woman of that place named Florence Mason that he was unmarried, and promised to marry her, procured her to come with him to Kansas City, where under said promise of marriage, he seduced and had frequent sexual intercourse with her; but when she learned he was a married man she filed suit against him, which is now pending in the circuit court of Jackson county, Missouri, for $50,000 damages for breach of said promise. That he also, on August 28, 1905, procured a woman to impersonate plaintiff in the execution and acknowledgment, before one George Cassidy, a notary public, of a deed of trust on her lands to secure a loan of $10,000 in favor of the Mutual Life Insurance Company. That about the 12th day of November, 1905, the plaintiff discovered for the first time the facts above stated respecting the relations of the defendant with the negro woman Lena, and Miss Mason, and the forgery of said deed of trust, and has since that time lived apart from him.

The plaintiff asks that the decree of divorce be declared fraudulent and void, that it be vacated, set aside and for naught held, and that she be restored to all her lawful rights as the legal wife of defendant, and for general relief.

On June 27, 1907, the defendant filed a general demurrer, which was sustained by the court, which thereupon, the plaintiff declining to plead further, rendered final judgment dismissing the petition, and for the recovery of costs by the defendant, from which this appeal is taken.

I. The question preliminary to all others in this case is whether or not the amended petition is a part of the record. The respondent's attorneys do not question the fact that by written authority of their client, dated April 30, 1907, they entered into a stipulation dated May 3, 1907, for the entry of his appear-

ance to this suit, nor that on the 17th day of May, 1907, they received a copy of the amended petition in question. Nor do they question the statement of Mr. Lewis, the chief deputy clerk of the circuit court, that the paper was in his hands and had been indorsed by him with its serial and term numbers, and its divisional assignment, at some time before the beginning of the June term. They do say, however, that although these facts may exist, they do not constitute such evidence as authorizes the entry *nunc pro tunc,* which could only be made upon the evidence of minutes and other writings constituting records of themselves. They say in substance that after the close of the term during which a judicial act is done, such things can only be shown by the records, and that the amendatory power of the court over its records is then limited to the formal statement of that which the record already informally shows.

We find it unnecessary to enter into a critical examination of this doctrine, because it has reference only to the judicial acts of the courts and not to the ministerial acts of its officers. The plaintiff had the right, as a matter of course, to file the amended petition at any time before an answer or reply should be filed (R. S. 1899, Sec. 661), and that this could be done before the return day of the summons or other original notice is not questioned. The only question is upon the evidence necessary to show that it was filed. It is plain that if it had been filed before the demurrer, it had superseded the original petition, and become the only pleading to which that demurrer could apply. The statement of the clerk on the back of a paper of the fact and date of its filing is not a statement of any act of the court, but a statement by him of his own act as a ministerial officer. This court in Baker v. Henry, 63 Mo. 519, in considering the same question said: "The mere indorsement by the clerk on the

paper is not the sole constituent element of filing that paper; for in legal contemplation the presentation and delivery of the paper to the court or officer is the filing, which dates from its receipt by the clerk and lodgment in his office, although the clerk's indorsement is the highest legal evidence of the filing; and that indorsement being merely ministerial, is amendable at common law." In Grubbs v. Cones, 57 Mo. 83, the court said: "But it is contended that the indorsement was a part of the record, and it could not be altered or changed. The date of the filing becomes material, for on it depends the validity of the lien. . . . The indorsement though required to be made by the clerk when he receives a paper, does not constitute the filing of the same. The filing is the actual delivery of the paper to the clerk without regard to any action that he may take thereon. If the clerk commits a clerical error, or makes a mistake in reference to the time at which he received the paper, that will not make any difference. He may indorse upon it the wrong date, or an impossible date, and still the real date of the filing will be the same." In Bennet v. Hall, 184 Mo. 420, VALLIANT, J., delivering the opinion of this court, said: "If the clerk had left the original petition on his table after the adjournment of court, and one of the petitioners had taken care of it in the same way he did of this map, that action would not have rendered the paper when satisfactorily identified any the less a part of the files of the case." And in Pullis v. Summerville, 218 Mo. 635, the same judge, in speaking of the oath of a referee taken before the clerk, said: "But when taken before the clerk and left with him it is filed; the indorsement 'filed', by the clerk, is only evidence of the fact. In Grubbs v. Cones, 57 Mo. 83, the court said: 'The filing is the actual delivery of the paper to the clerk without regard to any action that he may take thereon.' "

The same principle is involved in the amendment of a sheriff's return, which stands on the same footing as the indorsement of the clerk upon papers filed in his office, in the respect that it is the statement, by an executive officer, of his own act, and not of the act of the court. [Judd v. Smoot, 93 Mo. App. 289; Martin v. Castle, 182 Mo. 216.] These statements or returns were always amendable at common law, and the authority to direct their amendment is derived not only from the common law control which every court has over the truth of its own records, but is secured to the courts of our State by statute (R. S. 1909, Sec. 1861). In the exercise of this supervision the court, in this case, has found, from evidence which not only amply supports its conclusion, but remains undisputed, that the amended petition was on file long before the filing of defendant's demurrer, and we are bound by this finding, and must treat it as the pleading to which the demurrer is directed.

II. The respondent challenges the jurisdiction of this court on the ground that it does not appear from the record that this is a case "involving the construction of the Constitution of the United States or of this State." He also elected to present his cause in such a way as to admit all the allegations of the petition, which, in the consideration of all the questions that arise upon this appeal, we must therefore asume to be true. It sets forth, with detail, that the judgment in question was obtained through a fraudulent scheme, by which the court was deceived, and induced to assume jurisdiction of a matter of which it could not lawfully take judicial cognizance, and that the appellant was, by false swearing and imposition upon the court by respondent, wrongfully and fraudulently kept in ignorance of the proceeding, and from having any opportunity to appear and defend, until the respondent had obtained a final judgment of divorce against her,

and the term had elapsed at which it was entered. It also asserts the claim that such a judgment, so obtained, does not constitute due process of law within the meaning of the State and Federal Constitutions; that for this reason the appellant has the constitutional right to have it annulled in this proceeding; and that if section 2932, Revised Statutes of Missouri of 1899, be so construed and enforced as to protect it, and to prevent its vacation, then said statute operates to deprive her of her property and rights without due process of law, and deprives and denies to her the equal protection of the laws, in contravention of the 14th Amendment of the Constitution of the United States, and of section 30 of article 2 of the Constitution of the State of Missouri.

There can be no question that the court, in sustaining the demurrer, did so upon the ground that the statute so pleaded by the appellant was valid and constitutional, that it applies to the judgment in question, and protects it against this proceeding in equity to set it aside. A careful examination of the briefs of the parties shows that this is the theory upon which the issues raised by the petition and demurrer were tried, and are presented here.

As we have already suggested, the Constitution of this State provides that the Supreme Court shall have exclusive jurisdiction "in cases involving the construction of the Constitution of the United States, or of this State." Construction is a broad term, and perhaps as instructive a definition as could be stated is quoted from Abbott in Webster's International Dictionary as follows: "Strictly, the term [construction] signifies determining the meaning and proper effect of language by a consideration of the subject-matter and attendant circumstances in connection with the words employed." In other words it does not stop with interpretation, but applies the language as interpreted to both the subject-matter and the attendant

circumstances.  The constitutional provision does not, to give this court jurisdiction in this case, require findings that some constitutional provision has been violated, or constitutional right denied, for that is the ultimate object for which the jurisdiction exists.  It is only necessary that a constitutional question be presented to the court in the manner required by the rules governing its practice, and on its presentation the jurisdiction attaches to determine it.  This is made clear by Mr. Justice HARLAN in Insurance Company v. Needles, 113 U. S. 574.  He said: "Our jurisdiction is not defeated, because it may appear, upon examination of this Federal question, that the statutes of Illinois are not repugnant to the provisions of that instrument.  Such an examination itself involves the exercise of jurisdiction."  The jurisdiction does not depend upon the validity of the claim set up under the Constitution or laws.  It is enough if the claim involves a clear and substantial dispute or controversy.  And as to the nature of this claim Mr. Justice WHITE, speaking for the court in Insurance Company v. Austin, 168 U. S. 695, said: "Of course, the claim must be real and colorable, not fictitious and fraudulent.  The contention here made, however, is, not that the bill, without color of right, alleges that the State law and city ordinances violate the Constitution of the United States, but that such claim as alleged in the bill is legally unsound.  The argument, then, in effect, is that the right to a direct appeal to this court does not exist where it is claimed that a State law violates the Constitution of the United States, unless the claim be well founded.  But it cannot be decided whether the claim is meritorious and should be maintained without taking jurisdiction of the case."

In Cohens v. Virginia, 6 Wheat. 264, Chief Justice MARSHALL (p. 429) said: "In such cases the Constitution and the law must be compared and construed.  This is the exercise of jurisdiction.  It is the only ex-

ercise of it which is allowed in such a case;" and, with his usual directness of statement, he says with reference to the jurisdiction of the court over the appeal he was then considering (p. 404): "It is most true that this court will not take jurisdiction if it should not; but it is equally true that it must take jurisdiction if it should." That is a clear and concise statement of our duty in this case. It has been suggested that our exclusive jurisdiction will be defeated whenever the case assumes such a condition that it may be disposed of on some other point than that involving the consideration of the Constitution of the United States, or of this State. This point is very well answered by the Supreme Court of the United States in Holder v. Aultman, 169 U. S. 81, in which the court determined that it had jurisdiction under the provision of the judiciary act because the case involved the construction of the Constitution of the United States, but found it unnecessary to pass upon the constitutional question because it was of the opinion that the contract involved was not within the statute set up by the defendant. So in this case we may hold that it involves the construction of the Constitution, and assume jurisdiction accordingly without hesitation. We may then decide, should it become necessary in the exercise of that jurisdiction, that the statute about which the contest has thus far gathered has no application to the question presented. As said in the case last cited, the jurisdiction does not depend upon whether the right claimed under the Constitution has been upheld or denied in the court below; and we add that it may be invoked by either party to the appeal or writ of error; the only condition being that the constitutional question is involved in the case. It goes without saying that if its decision affects one of the parties to the controversy it must necessarily and correspondingly affect the other. Illustrating with the case in hand, let us suppose that this demurrer had been overruled;

that the record had been made to show that it was done, not on any constitutional ground, but because the statute invoked by the defendant was held to be inapplicable; that the cause had been thereupon tried and judgment given the plaintiff under the same holding, she would, thus far, have no cause for complaint and no ground for appeal from or disturbance of the judgment in her favor. But suppose, under such circumstances, the defendant should appeal; then the same old constitutional question would at once leap to a position of the same importance with reference to her rights that it occupied before the decision in her favor upon the demurrer. She would then insist upon it, and insist that this court assume jurisdiction to determine it. If we should refuse, and it should go to the court of appeals, and that court should decide that the statute she had complained of did apply, it would then be compelled to hold that it had no jurisdiction to pass upon the constitutionality of the act. If it should then reverse the judgment of the trial court and enter judgment dismissing the bill, plaintiff would, without any fault of her own, have lost forever whatever right she may have had under the Constitution.

We think that the question whether or not the plaintiff has been deprived by the judgment of the circuit court of a constitutional right is not a fictitious one; that it appears from this record that it was fairly and in good faith presented to the court, and was decided against her; and that it is now properly before us for consideration, in the exercise of that branch of our jurisdiction relating to cases involving the construction of the Constitution of the United States and of this State.

III. Section 2381 of the Revised Statutes 1909, enacted November 23, 1855, is as follows: "No petition for review of any judgment for divorce, rendered in any case arising under this article, shall be allowed,

any law or statute to the contrary notwithstanding; but there may be a review of any order or judgment touching the alimony and maintenance of the wife, and the care, custody and maintenance of the children, or any of them, as in other cases." The question for consideration in this case is whether, notwithstanding this statute, a suit may be maintained in the court in which it was rendered to set aside and annul a judgment for divorce obtained upon a fictitious cause of action, in a county other than that in which the plaintiff, or the defendant, who was a resident of this State, resided, upon notice by publication obtained upon plaintiff's affidavit stating that the facts authorizing such publication existed, which statement was knowingly false, and without appearance or knowledge of the proceeding on the part of the defendant. In other words was this statute intended by the Legislature to prevent the maintenance of an action to set aside and annul a judgment for divorce concocted and obtained by wilful and deliberate fraud; and if it was so intended is it effective for that purpose? The. widespread discussion of the question of reform in the divorce laws of the States, of which, as of all other matters of public. history, we take judicial notice, emphasizes the importance of this question, and gives additional interest to its investigation.

While generally the domestic relation of husband and wife is subject to the control of the Legislature, which may ordinarily prescribe the conditions and limitations under which it may be assumed, and the causes for which it may be dissolved, there are many rights and interests incident to it which are necessarily objects of private ownership. Since the act of 1835, by which it was provided that marriage should be considered in law as a civil contract, we cannot conceive of any right or duty of the parties toward each other growing out of the relation which is not a contract right, and consequently a property right, of which, un-

der the Constitution of the United States and of this State, they cannot be deprived otherwise than by due process of law. Even before the act referred to went into effect, this court had decided, in State v. Fry, 4 Mo. 190, that the granting of divorce was a function pertaining to the judicial department of the State, and that an act of the Legislature purporting to grant a divorce was void. This decision was rendered during the August term, 1835, and it was during the session of the General Assembly which convened in September of that year that the law referred to was enacted. The court, in its opinion in that case, called attention to the 7th section of the Bill of Rights of the Constitution of 1820, quoted "that courts of justice ought to be open to every person, and certain remedy afforded for every injury to person, property, or character," and said: "It appears to me that this declaration of the convention amounts to a strong command and direction to the courts, to entertain, hear and determine all manner of complaint for injuries done to persons, property and character. Is the granting a divorce, a fit subject for judicial action? The General Assembly have expressly made it so, by the act respecting divorces (Rev. Code, 328), and that they have properly made it so I think is clear from the above 7th section of the Bill of Rights. If I am not mistaken in this argument and view, the inevitable result is, that the legislative department of the government cannot grant a divorce, because that involves a question of injury to person, property, or character,—that the judicial power is expressly charged with this, and that the Legislature are expressly forbidden to exercise any power that properly belongs to another department." After the Act of 1835, Bryson v. Campbell, 12 Mo. 498, came before the court for determination, and in holding a legislative divorce void the court said: "The marriage in question having taken place subsequent to the act aforesaid, and under what we consider its express guaran-

ties, to sanction the legislative competency to inter-
fere with such a 'contract' would be scarcely less ob-
jectionable upon the score of public justice, than it has
heretofore been deemed to be incompatible with public
policy and the constitutional distinction of the powers
of government.'' The question was again here in 1853,
in Bryson v. Bryson, 17 Mo. 590, in which the only
syllabus, the shortest perhaps in the reports of our
cases, is.as follows: ''A legislative divorce is unconsti-
tutional.'' In that case GAMBLE, J., in closing his opin-
ion, says: ''Whatever of trouble and confusion may
result from maintaining the decision of the State v.
Fry, will not be attributable to any novel or unexpected
opinions on the law. Those who either had not legal
cause for seeking a divorce, or were in too great haste
to wait to the end of regular judicial proceedings, and
have, therefore, resorted to the Legislature to obtain
release from their bonds of matrimony, must be con-
tent to take the acts they have obtained, without ex-
pecting courts to maintain their validity against the
Constitution of the State.''

In 1865 the people of the State expressed their
will upon the question by incorporating in the Consti-
tution of that year (article 4, section 27) a provision
forbidding the General Assembly to pass special laws
divorcing any named parties. Had there been up to
that time any question as to whether the granting of
divorce was a legislative or judicial function, the peo-
ple, by that provision, decreed that thereafter all di-
vorces should be granted in pursuance of general laws
through judicial inquiry and action. There can be no
longer any doubt that in this State the rights and in-
terests growing out of the marital relation are entitled
to the same protection, by the same constitutional guar-
anties, as those incident to the business relations, and
that this most sacred and far reaching of contracts,
which secures not only strictly property interests so
called but carries its rights to maintenance, protection,

and the society of each other, which are, in our courts, frequently measured in money judgments, is protected by those provisions of the Constitutions of the United States and this State, which provide that no person shall be deprived of life, liberty or property without due process of law.   Whether a judgment, concocted in fraud, rendered in a case of which the court is induced to assume jurisdiction by the perjury of the plaintiff, *without any notice* to a defendant who was in law entitled to such notice, and founded on a claim entirely fictitious, is sufficient to constitute due process of law within the meaning of these provisions; and whether a statute which compels the defendant in such a judgment to respond to it by immediately depriving her of every possible remedy, constitutes such process, would seem to carry its own answer.   Due process of law, like the law of the land, is a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial (Mr. Webster in Dartmouth College v. Woodward, 4 Wheat. 518); and these constitutional provisions were intended to secure the individual from the arbitrary exercise of the powers of government unrestrained by the established principles of private right and distributive justice. [Bank v. Okely, 4 Wheat. 235.]   To try the initial question, whether or not the defendant has been duly notified of the proceeding, in her absence, and to secure a finding against her contrary to the fact, upon wilfully false testimony, cannot of itself be due process of law, but is a fraud upon the court, for the purpose of depriving the defendant of the opportunity to be heard, which is the foundation of all legal process.

Fraud will vitiate any, even the most solemn transactions, and an asserted title to property founded upon it is utterly void.   [STORY, J., in United States v. The Amistad, 15 Pet. 518, 594.]   Neither judgments at law nor decrees in equity are exempt from the operation of this rule.   [Lewis v. McCabe, 76 Mo. 307, 309 and cases

cited; Story's Equity Jur. (13 Ed.), 261, sec. 252; Free-
man on Judgments, secs. 250, 591.] Relief may be had
from it not only in equity, but it constitutes a defense
at law, so that no judgment can be recovered on a cause
of action tainted with fraud. Innocent persons may be
protected by a judicial record, but as between the par-
ties themselves, whatever the transaction may be, it
is void. Yet in this case it is attempted to give val-
idity to the thing in favor of the party guilty of its
perpetration, by using as an instrument the statute
which we have quoted at the beginning of this para-
graph. The part of the section (2381, Revised Statutes
1909) relied on for that purpose is as follows: "No
petition for review of any judgment for divorce, ren-
dered in any case arising under this article, shall be
allowed, any law or statute to the contrary notwith-
standing." In construing this we must not only take
into consideration the words to be interpreted and ap-
plied, but, "whatever may be the language of the Leg-
islature, we are bound to presume that they intended to
keep within the limits of the Constitution, and to re-
strict the operation of statutes to cases where they may
have effect consistently with the Constitution." [Ken-
nett's Petition, 24 N. H. 141.] "In all such cases it
must be understood that no Legislature could have in-
tended to violate the Constitution, or to tread under
foot the great principles of justice. And such a pro-
viso, limiting the construction of the statute, must be
implied, as will prevent injustice, and give to all par-
ties a reasonable opportunity for the prosecution of
their rights." [Willard v. Harvey, 24 N. H. 354.] "If
there is doubt or uncertainty as to the meaning of the
Legislature, if the words or provisions of the statute
are obscure, or if the enactment is fairly susceptible
of two or more constructions, that interpretation will
be adopted which will avoid the effect of unconstitu-
tionality, even though it may be necessary, for this
purpose, to disregard the more usual or apparent im-

port of the language employed.'' [Black on Interpretation of Laws (2 Ed.), sec. 41, p. 113 and cases cited.]

Our Code of Civil Procedure is necessarily a composite structure, consisting of rules which, as far as practicable and consistent with the due administration of justice, are applicable alike to all controversies which had, before its adoption, been heard and determined according to the procedure at common law and in equity. After a judgment had been recorded at law, and the term had elapsed at which it was rendered, it could only be disturbed in the court that rendered it, by motion founded upon some defect or irregularity apparent in the record, or by motion in the nature of a writ of error *coram nobis* founded upon some jurisdictional fact not appearing in the record. Otherwise the remedy was by writ of error prosecuted in a court having jurisdiction to correct the errors of the trial court. In equity, application could be made to correct a decree in the court that rendered it, by a supplemental bill in the same case, called a bill of review. This could be founded either, first, on error apparent upon the record, or, second, on newly discovered evidence. In the first instance the sustaining of the bill operated like a writ of error at law, opening the case for such proceedings as might be necessary to correct the errors complained of, or vacating the decree and dismissing the bill were that the remedy indicated. In case the bill was founded upon newly discovered evidence, and was sustained, a re-examination of the case in the light of the new facts resulted; so that the name ''bill of review'' indicated with great exactness the nature of the pleading. It was not an independent suit, but a proceeding in the same cause, to review it. When it was necessary to proceed to set aside an enrolled decree for fraud in procuring it, it was done by original bill, that is, by an independent suit, and this was sometimes called an original bill in the nature of a bill of review, but never a bill of review. The jurisdiction

in such cases applied as well to the setting aside of judgments at law, void by reason of fraud in their procurement, as to decrees in equity. As to the jurisdiction of courts of equity in such cases, Chancellor KENT, a master in chancery practice, said in Shottenkirk v. Wheeler, 3 Johns. Ch. 280: "A judgment at law may be impeached in this court for fraud, but there is no case in which equity has ever undertaken to question a judgment for irregularity. The power of a court of law is always exercised, in such cases, in sound discretion; and the relief is frequently granted upon terms. This court cannot impose any such terms, or take any such cognizance of the case." So the bill to impeach a judgment or decree for fraud was not designed to bring about a review of the case. It applied as well to judgments at law, over which the chancery court had no jurisdiction, as to decrees in equity over which it had improvidently or improperly exercised its jurisdiction.

With the enactment, in 1849, of our code abolishing the distinction between actions at law and suits in equity, much of the old terminology was discarded, and "bills" in equity and "declarations" at law became simple "petitions." "Decrees" became "judgments," and were attacked for irregularity of record, and new trials were granted for newly discovered evidence, upon simple "motions." In fact it was expressly provided in this act (Laws 1849, p. 100, secs. 1 and 2), that: "Every direction of a court or judge, made or entered in writing, and not included in a judgment, is denominated an order;" and that "An application for an order is a motion." This applied alike to actions which had theretofore been legal and equitable. The word "review" seems to have been erased from the vocabulary of the trial courts. Notice by publication against non-resident defendants, which had theretofore pertained exclusively to the chancery practice, except in certain special proceedings, was made a feature of all classes of actions which come within the code, whether

*in rem* or *in personam.* Although substantially the present provision was made for opening and reviewing judgments rendered upon constructive notice (Id., p. 103, sec. 8 *et seq.*), it was not to be sought by "petition for review," but by simple "petition" (Id., sec. 9). By the Revised Statutes of 1855, the proceedings for reviewing judgments of this character were greatly modified, and the initial step for that purpose was named "petition for review" (2 R. S. 1855, 1280, sec. 13). The statute recognized its character as a supplemental proceeding by requiring that it be verified by affidavit as *required in case of an original petition,* and provided that the judgment should only be opened on condition that the defendant answer or demur to the original petition within a reasonable time to be ordered by the court. It was also provided that in case this "petition for review" be not filed within three years after the final judgment is rendered it shall stand absolute.

At the same session of the Legislature, the section which is interposed as a defense in this suit was enacted, and incorporated in chapter 55, R. S. 1855, entitled, "An Act concerning divorce and alimony." It provides, as we have seen, that no "petition for review" shall be allowed of any judgment rendered in any case arising under that chapter.

That these several provisions are *in pari materia* there can be no doubt. The practice in divorce cases is prescribed and regulated by both acts. For instance, the notice by publication which constitutes the foundation of the judgment of divorce in this case, is authorized and regulated by the general practice act. The "petition for review" authorized in the general act would apply to judgments for divorce had it not been modified by the act concerning divorce and alimony. No action for divorce can be prosecuted, or even begun, without reading them both together as parts of one judicial plan for obtaining a judgment, and we must

assume that consistency of language which is indispensable to express a consistent plan. Even the words in the last section of the divorce act "any law or statute to the contrary notwithstanding" are innocuous and inexpressive compared with the following words used in the general practice act (R. S. 1855, p. 1281, sec. 15) : "If such petition for review be not filed within three years after such final judgment is rendered, the same shall stand absolute." That the petition in this case is not a petition for review under any reasonable definition of that term is evident. It neither corresponds to the definition of "bill of review" as formerly used in chancery practice, nor to the definition of "petition for review" as used in the practice act of which the practice relating to divorce and alimony forms a part. The doctrine of this court relating to the construction of these words, was expressed by BLACK, J., in Irvine v. Leyh, 102 Mo. 204, as follows:

"We here notice the contention made by the defendant Leyh, that this suit is barred by section 3686 of the Revised Statutes of 1879. That section and the preceding and succeeding sections provide for a review where the defendant is notified by publication only and does not appear to the action. The petition for review must be filed within three years after final judgment, and, if not filed within that time, the judgment stands absolute. To obtain such review it is not necessary to show fraud in procuring the judgment, but it will be sufficient to show that the petition, upon which the judgment was procured, is untrue in some material matter, or that the party asking the review has and had a good defense. The plaintiffs here do not ask a review under the statute. They seek to set aside the attachment judgment because procured by fraud. Courts of equity have an inherent power to set aside judgments obtained by fraud, and that power is not taken away by the statute providing for a review in the cases before mentioned. This suit is not founded

on the statute, and hence section 3686 constitutes no bar.''

The same learned judge also wrote the opinion of the court in Salisbury v. Salisbury, 92 Mo. 683, which seems to be the principal case relied on by the defendant. How directly the question as to whether a petition to set aside a judgment for fraud is a petition for review, was presented in the Salisbury case, is shown by the following fair statement of the issue appearing in the opinion, page 686: ''The general allegation is, and the detailed facts show, that defendant's course of conduct was a systematic contrivance to get rid of his wife, that he was not entitled to the decree, but procured the same by a shameful deception and fraud on the plaintiff. No marriage relation has been contracted by either party since that time, and it will be taken, without further discussion, that plaintiff on the petition, confessed as it now stands, is entitled to relief unless she is shut out and deprived of it by reason of our statute.'' Upon the question so presented he said, page 688: ''The present petition is essentially a bill of review, or, as it is said, in the nature of a bill of review. Its first and foremost object is to set aside the former decree, and we cannot escape the conclusion that it is within the statute, and clearly prohibited. It was the evident purpose of the Legislature, with the example of Smith v. Smith, supra, before it, to deny a review in all cases, whether based upon a charge of fraud or not. The breaking up of second marriage relations, which must often result in disaster to innocent persons and children, doubtless led to the enactment. It would seem the statute might allow a review of these divorce decrees rendered on publication of notice, where no new marriage relation has been contracted, without violating any principle of sound public policy. But a criticism of the law avails nothing. The statute is clear and emphatic. It makes no excep-

242 Sup.—42

tion. The courts are powerless to legislate one into it. It asserts broadly a principle of public policy which has found recognition elsewhere.''

We have attempted to reconcile the language of these cases, but have been unable to do so, and conclude that the views of the distinguished judge who wrote the opinions had become modified. It will be observed that Judge BLACK attributes the enactment of the last section of the divorce act to the dissenting opinion of Judge SCOTT in Smith v. Smith, 20 Mo. 166, 169, in which, without the support of the court, he deprecated the legislative policy which would give the man who had obtained a divorce through the courts the privilege of marrying, and after it had been exercised, withdraw it and thereby make an innocent woman a concubine, and her children illegitimate. This eloquent denunciation would perhaps carry greater weight had it been made with the deliberation necessary to the consideration of section 10, chapter 50, of the Revised Statutes of 1845, then as now in force, providing that the issue of all marriages deemed null in law, or dissolved by divorce, shall be legitimate. This statute has frequently been before the courts for interpretation (Green v. Green, 126 Mo. 17, and cases cited), and would certainly have taken care of the issue of such a marriage, and, so far as the mother is concerned, it will be important to consider her status as the innocent victim of cruel fraud when her rights are presented for adjudication, as is suggested by NAPTON, J., in Mansfield v. Mansfield, 26 Mo. 163. It seems to us that the argument of Judge SCOTT could be used with even greater force in favor of the bigamist. We say *greater* force because his argument expressly assumes that the woman last injured had before her the public record of the divorce and acted upon the faith of it. This should open, to a prudent person, a field of suggestion and inquiry more or less fruitful, while in case of the

bigamist the rule is that the controlling incident of his past is usually shrouded in mystery.

The doctrine that the last husband or wife takes precedence of all predecessors is a dangerous one, which we should feel slow to recognize as a part of the judicial policy of the State. There may be instances, as Judge SCOTT suggests, where innocent women will suffer in maintaining the integrity of the marriage relation; but in such cases the suffering will not come from the protection extended by the courts to those who honestly and sincerely fulfill the obligations incident to that relation, but from the fraud and wrong of those who treacherously violate them. If we prevent frauds of this kind there will be no victims. If we encourage and condone them the victims will always be at our doors clamoring for justice. The policy indicated in the judgment of the circuit court in this case would hold out the promise of easy success to men and women who desire to free themselves from their present matrimonial obligations for the purpose of contracting new ones, and every case would have its innocent victim. If the ties that bind us in our domestic relations are to be strained and broken, the responsibility should not rest upon the courts.

We think that the gross frauds charged in the petition and admitted by the demurrer, render the judgment of divorce which it seeks to set aside void as between the parties thereto, and that it should, upon the facts stated, be set aside in equity. We are also of the opinion that the statute invoked by defendant forbidding the allowance of a petition for review in such cases, is not applicable to an original suit of this character, and was not intended to so apply. We have carefully read the authorities cited by the defendant and have only been strengthened by them in the opinions here expressed. If there is anything in the case of Salisbury v. Salisbury inconsistent with these views, it is to that extent disapproved. The judgment of the

circuit court is therefore reversed, and the cause remanded, to be proceeded with in accordance with the views here expressed. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of Brown, C., is adopted as the opinion of the Court in Banc. *Valliant, C. J., Lamm, Graves, Ferriss, Kennish* and *Brown, JJ.,* concur; *Woodson, J.,* dissents in an opinion filed.

## DISSENTING OPINION.

WOODSON, J.—This is a suit instituted by the plaintiff against the defendant in the circuit court of the city of St. Louis, to set aside a decree of divorce theretofore rendered by said court in a cause where the defendant here was the plaintiff there, and where the plaintiff here was the defendant there. A demurrer was filed to the plaintiff's petition, and sustained by the court, and she declining to plead further, judgment was rendered in favor of the defendant, and the plaintiff appealed the cause to this court.

The facts, in so far as here material, are as follows:

John Dorrance, the defendant, a resident of Chariton county, Missouri, about the month of May, 1906, instituted in the circuit court of the city of St. Louis, a suit for divorce from his wife, Emma Dorrance, on the ground of desertion. The petition was in the ordinary statutory form, and duly sworn to by the plaintiff. Accompanying the petition, was an affidavit stating that the defendant had absented herself from her usual place of abode, and had so concealed herself that the ordinary process could not be served upon her, and prayed for an order of publication. The order was duly issued, and regularly published in a newspaper, published in the city of St. Louis, as required by law.

The defendant failed to appear, and in due time a judgment by default was rendered in favor of the plaintiff, divorcing him from her.

After the lapse of about one and a half years, and after several terms of the court had also elapsed, the plaintiff brought this suit to set aside the decree of divorce, stating the foregoing facts, together with the following, as grounds therefor:

That she did not desert him; that she was only temporarily absent in Kansas City, at the time of the institution of the divorce suit, and that he knew that fact, and of her whereabouts; that she was the innocent and injured party, and that he was the guilty one; that he was guilty of adultery, and had committed a felony, by having a certain person impersonate her, and procuring a loan of $10,000 on her lands, secured by a deed of trust; that he was not a resident of St. Louis, and that he had procured the decree for divorce through fraud, etc.; and prayed to have it set aside and for naught held.

I. Counsel for appellant insists that the decree for divorce in favor of John Dorrance, obtained against their client, Emma Dorrance, is void, for the reason that she was not legally served with process, and therefore the circuit court of the city of St. Louis had no jurisdiction to hear and determine the cause.

There can be no doubt but what the circuit court of the city of St. Louis is a court of general jurisdiction, and has jurisdiction to hear and determine divorce cases. Nor can there be any question but what John Dorrance submitted himself to the jurisdiction of that court by instituting therein said suit for divorce. [11 Cyc. 670, par. 3, and cases cited.] And the record shows that the order of publication against Emma Dorrance was duly issued and published as required by law.

None of the foregoing facts are disputed, but upon the contrary, are admitted or alleged to be true in the petition of the appellant, but the validity of those facts are challenged for three reasons:. (a) Because John Dorrance was not a resident of the city of St. Louis at the time of the institution of the divorce suit; (b) Because the defendant had not deserted her home, and concealed herself so that the ordinary process of law could not be served upon her; and (c) Because under those facts, the order of publication was void because the plaintiff was not a resident of St. Louis, and consequently she was not served with process.

We will briefly consider those three questions in the order stated.

(a) Conceding that John Dorrance was not a resident of the city of St. Louis, at the time he brought the divorce suit, nevertheless, when he voluntarily went there and instituted the suit for divorce, he submitted himself to the jurisdiction of that court. That is academic, and it would be a useless waste of time to cite authorities in support thereof. However, I will cite on well considered case upon this subject sustaining that proposition, and that is, Johnson v. Beazeley, 65 Mo. 250.

In that case, it was contended that letters of administration were granted in the wrong county, and for that reason it was insisted that the proceedings had in that court were void for want of jurisdiction. But the courts in that case, after deciding that the jurisdiction of the probate courts over "the administration of estates of deceased persons was general, exclusive and original," etc., and their action on these subjects was entitled to the same weight as that of any other court of record, and was "conclusive in all collateral proceedings" held that: "When Higginbotham died, it became necessary to appoint an administrator of his estate. The probate court had to determine several questions of fact before making the appointment;

among them, that Higginbotham was dead, that he resided and had a mansion house in the county where the court was asked to make the appointment, or that, when he died, he had no place of abode or mansion house, that he owned land in that county, and that it was the greater part of his land. Having a general jurisdiction over the subject-matter, and the law requiring the court to pass upon those questions, before granting letters of administration on his estate, it is to be exclusively presumed, in a collateral proceeding, that the court not only did so, but that it correctly passed upon them. To allow the heirs, or any one else, in a collateral proceeding to question the correctness of the judgment of the court, would so imperil the titles conveyed at administrator's sales of lands that no prudent man would bid their value, and estates would be sacrificed. Both public policy and the weight of authority sustain the title which defendant acquired by his purchase at the administrator's sale.''

The doctrine announced in that case has been approved by this court in scores of other cases. If that be true of probate courts, then all the stronger is the reason for the existence of the rule when applied to a decision of the circuit court, which undoubtedly is a court of general jurisdiction.

So the question, as to whether or not John Dorrance was a resident of the city of St. Louis, at the time of the institution of the divorce suit, is concluded by the decree which was duly rendered therein.

We must, therefore, hold that the circuit court of the city of St. Louis, in the divorce case, had jurisdiction of the plaintiff, John Dorrance, and that it was not void on that acount, but only voidable at most.

(b) The record shows that Emma Dorrance, the defendant in the divorce suit, was duly notified by publication of its institution as provided for by section 1770, Revised Statutes 1909.

The fact that the defendant in the divorce suit was in the State, and had not concealed herself from her usual place of abode, etc., would have been sufficient ground for quashing the service, yet that fact in no sense would militate against the fact that she was actually notified of the institution of the suit, by the publication mentioned.   To illustrate: Suppose under the same facts, as disclosed by this record, the defendant, Emma Dorrance, in that case, instead of having been notified by publication, as she was, had been personally served with a summons, by the sheriff of Jackson county, could it be seriously contended, that the mere fact that she had not absconded or concealed herself at the time of the institution of that suit would have rendered the personal service had upon her absolutely void, and could for that reason be questioned in a collateral attack? Unquestionably not.  Under the facts of the supposed case, if counsel for the defendant had desired, they could have questioned the jurisdiction of the circuit court over the person of their client, predicated upon the ground that she had not absconded herself, etc., and she should have raised those questions by answer, or by a timely motion, and she would not have been justified in ignoring the personal service had upon her, or to have treated the decree for divorce as a nullity.

In principle, there is no difference between the service by publication, which was had upon the defendant, in that case, and the personal service mentioned in the supposed case. Both stand precisely upon the same footing, and while both were irregular, in a sense, nevertheless, they were valid until set aside in some appropriate and timely manner.

This precise question was presented to this court for determination in the case of Tooker v. Leake, 146 Mo. 420.  On page 428 the court used this language:

"The case was tried by the court without a jury. The court by its declarations of law in effect holding,

first, that the order of the circuit court setting aside the judgment in the tax suit, had no effect upon the title acquired under the sheriff's deed; second, that although Horine and Tooker were in fact and long had been residents of Greene county, Missouri, at the time the return of *non est* on the *alias* summons was made by the sheriff of Lawrence county, and at time the order of publication was made and published in the tax suit, and final judgment therein rendered, and at the time of the execution and sale thereunder, yet such judgment would support such execution and sale and pass the legal title to the purchaser Davis, even though in fact he or some of his associates for whose benefit be bought, may have known that said Horine and Tooker so resided in said county in this State; and in accordance with said declarations, the finding and judgment was for the defendants. Plaintiffs appeal.

"'The action for the recovery of delinquent taxes, is an action *in rem* to enforce the State's lien against the land subjected to the tax, to which the owner is a necessary party. In such suits the statute provides that 'all notices and process shall be sued out and served in the same manner as in civil actions in circuit courts; and in case of suits against non-resident, unknown parties, or other owners on whom service cannot be had by ordinary summons, the proceedings shall be the same as now provided by law in civil actions affecting real or personal property.' [R. S. 1889, sec. 7682.] In civil actions in circuit courts, for the enforcement of liens on real property within the jurisdiction of such courts, the statute provides that, 'If the plaintiff or other person for him shall allege in his petition, or at the time of filing same, or at any time thereafter shall file an affidavit stating, that part or all of the defendants are non-residents of the State . . . and cannot be served in this State in the manner prescribed in this chapter, or have absconded or

absented themselves from their usual place of abode in this State, or that they have concealed themselves so that the ordinary process of law cannot be served upon them, the court in which said suit is brought, or in vacation the clerk thereof, shall make an order directed to the non-residents, or absentees, notifying them of the commencement of the suit,' etc. (R. S. 1889, sec. 2022), and by section 2024, it is further provided that, 'When, in any of the cases contained in section 2022, summons shall be issued against any defendant, and the sheriff to whom it is directed shall make return that the defendant or defendants can not be found, the court being first satisfied that process cannot be served, shall make an order as required in said section.' The statute then provides how such orders shall be published. When so published, and the publication proved, the defendants in such actions are as effectually served with process as if served by summons, and a final judgment rendered on such service is just as conclusive as a judgment rendered upon service by summons, except that the defendant in the former case may within three years after the rendition thereof have the same reviewed and set aside for good cause, as provided in Revised Statutes 1889, section 2217 *et seq.* Such a judgment is impervious to collateral attack for any defect or imperfection in the service and not apparent upon the face of the record, and the jurisdiction of the court to render it cannot be questioned in a collateral suit by the allegation or proof of facts outside or *dehors* the record. [Payne v. Lott, 90 Mo. 676; Jones v. Driskill, 94 Mo. 190; Schmidt v. Niemeyer, 100 Mo. 207; Gibbs v. Southern, 116 Mo. 204; Cruzen v. Stephens, 123 Mo. 337.]''

The section of the statute upon which that decision was based is the same as section 575, Revised Statutes 1899, the section under which the publication in the case at bar was had.

The language before quoted, from the opinion in the case of Tooker v. Leake, supra, was referred to and approved by this court in the case of State ex rel. v. Wessell, 237 Mo. 593.

Again the mere fact that the defendant in the divorce suit did not see the published notice of the suit, did not, and could not affect its validity. [See, also, Ellis v. Nuckols, 237 Mo. 290.]

Our reports are full of cases holding such services to be valid, notwithstanding the fact that the defendants never saw the publication. We, are therefore of the opinion, that the circuit court of the city of St. Louis acquired jurisdiction over the persons of both plaintiff and defendant, in the divorce suit, and that being true, it must necessarily have acquired jurisdiction of the subject-matter of that suit, which was the marital relation existing between them. [Gould v. Crow, 57 Mo. 200.]

(c)  The third reason assigned for setting the decree for divorce aside, namely, that the order of publication was void, and therefore she was not served by legal process, is equally untenable. This necessarily follows from what we have held in paragraphs (a) and (b).

But in addition to that, in a former paragraph we disposed of the question of the validity of the order of publication, and the publication thereof, and there held that both were valid for the purpose of bringing the defendant therein into court. If that be true, and I think that there is no doubt of it, then she was in court, and she should have there made her defense whatever that may have been.

Not only did the publication of the notice bring the defendant into court, but the finding of that fact by the court, which was one of the issuable facts in the case, was conclusive upon her, until set aside in the manner provided by law, which will be considered in a subsequent paragraph.

In discussing this question, this court in the case of Fears v. Riley, 148 Mo. 49, 1. c. 58, said:

"It is the settled law in our State that in order to set aside a judgment for fraud, even in a direct proceeding, it must appear that fraud was practiced in the very act of obtaining the judgment. [Lewis v. Williams, Admr., 54 Mo. 200.] It is not enough that there was fraud in the cause of action on which the judgment is founded and which could have been interposed as a defense (unless its interposition was prevented as a defense by fraud). [Payne v. O'Shea, 84 Mo. 129; Murphy v. DeFrance, 105 Mo. 53; Oxley Stave Co. v. Butler Co., 121 Mo. 614.] The judgment must be concocted in fraud, and the fraud must be actual fraud as contradistinguished from a judgment obtained on false evidence. [Moody v. Peyton, 135 Mo. 482.] These principles and these cases have lately been reviewed and approved by this court in Hamilton v. McLean, 139 Mo. 678, and in Bates v. Hamilton, 144 Mo. 1.

"Apply these tests to the allegations of the petition, and we have this result: It may have been false that Laura Riley was a resident of Audrain county, but that was a fact to be tried in that case, which was open to denial and contest by the defendant, and no more divests the court of jurisdiction or renders its judgment void on the ground of fraud than any other fact falsely asserted or testified to in the case. It may have been that she joined Tobe Lee, a minor, as a party defendant so as to be able to institute the suit in the county in which she lived and one of the defendants is found, under section 2009, Revised Statutes 1889, but this was no fraud on the court, because the court was informed that Lee was a minor, and it appointed a guardian *ad litem* for him, and he filed an answer. Moreover, it is wholly a mistake to say that an infant is not liable in an action for tort, e. g., assault, false imprisonment, libel, slander, etc. [Conway v. Reed, 66 Mo. 346; Morgan v. Cox, 22 Mo. 373; Addison on Torts

(6 Ed.), p. 155, par. 101; Cooley on Torts (2 Ed.), p. 120.] Tobe Lee was liable in this case because he circulated the libel. [Townshend on S. & L. (4 Ed.), pp. 101, 102.]"

See, also, authorities cited and elaborately quoted from by the writer in the case of Lieber v. Lieber, 239 Mo. 1, decided by Court in Banc.

We, therefore, hold that the judgment and decree of the circuit court of the city of St. Louis, was valid and binding upon the defendant therein.

And it seems to me, that the three contentions previously mentioned and disposed of, are inconsistent with the whole theory of the present case as presented by counsel for appellant, in this: That, if the circuit court of the city of St. Louis acquired no jurisdiction over the persons of neither the plaintiff nor defendant, in the divorce suit, then clearly the decree rendered therein is absolutly void, and has no force or effect whatever. While upon the other hand, the petition in this case treats and considers the decree therein mentioned as an existing and valid judgment of that court, and comes here and asks this court to set it aside, for fraud, shown by evidence *aliunde* the record.

If absolutely void, then there is no necessity for setting the decree aside, for it could be collaterally attacked without resorting to this suit for that purpose.

These seem to be the views of my learned associate, Commissioner Brown, judging from the opinion written herein by him.

But be that as it may, in my opinion, there is no room for doubt but what the decree when rendered was not absolutely void but was voidable only and the main question in this case, as I see it, is, can that voidable judgment or decree be set aside in any manner at this late day?

That question will receive consideration in the next paragraph of this opinion.

II.  This brings us to the principal question involved in this litigation; and that is, has this court or any other court of this State, the authority of law, not the physical power, to set aside and nullify a decree of divorce, without the proper steps are taken therefor during the term at which it was rendered or within sixty days after the rendition of the decree. This question not only affects the authority of the court to nullify a decree of divorce, but it necessarily involves the divorce law itself, for the simple reason that if there were no divorces granted, then it is self-evident that there would be no fraudulent decrees for divorce rendered to be set aside, or nullified.

In fact, this is not only the chief proposition involved herein, but it is of the gravest character that has ever been presented to this court for determination since I have had the honor of being a member thereof.

It effects the very groundwork upon which our civilization and social system rest.  It involves sociology in its broadest, deepest and best sense.

It involved the family relation, the home, and the joys, pleasures and happiness which are incident thereto, to say nothing of the peace and prosperity of the country.

Because of the great wrongs perpetrated upon the State at large, as well as upon the home and family, the legal divorce, as we understand it, has become a State and National crime.

I would, if I had my way, abolish this hideous monster, which stealthily lurks about the fireside, ever seeking whomsoever it may destroy and to put asunder those whom God has joined together, save and except for the crime of adultery alone.

By so doing, we would preserve the holy bonds of matrimony, the family and the home for the wife and children, and at the same time do away with the unfortunate grass-widow and worse than orphan children, who so badly need the care, custody and teach-

ings of both father and mother; and at the same time, I would thereby practically put a stop to those fraudulent divorce proceedings and prevent the guilty parties from again marrying innocent women and bringing innocent children into the world and thereby making the former concubines and the latter bastards through the action of the courts, by setting aside and for naught holding decrees for divorce obtained prior to the second marriage, as was done in the case of Lieber v. Lieber, supra.

But such is not the law, nor have I the power to enact it, consequently, we must deal with this case according to the law as we find it in this State, and not as we would desire it to be.

The statutory provisions governing this question are sections 2931 and 2932, Revised Statutes 1899, which are the same as sections 2380 and 2381, Revised Statutes 1909, and they read as follows:

"Sec. 2380. No final judgment or order rendered in cases arising under this article shall be reversed, annulled or modified, in the supreme or any other court, by appeal or writ of error, unless such appeal shall have been granted during the term of court at which the judgment or order appealed from was rendered, or unless such writ or error shall have been issued within sixty days after the order was made or judgment was rendered.

"Sec. 2381. No petition for review of any judgment for divorce, rendered in any case arising under this article, shall be allowed, any law or statute to the contrary notwithstanding; but there may be a review of any order or judgment touching the alimony and maintenance of the wife, and the care, custody and maintenance of the children, or any of them, as in other cases."

The meaning of these statutes seem clear to me on their face, without seeking light elsewhere, but since some of my learned associates interpret them

differently from what I think they clearly mean, I will try to shed some sidelight upon them from other sources.

In the first place, the well known statutory rule of construction, which provides that in order to get at the true meaning of a statute, the court should first ascertain what the law governing the subject of the legislation was previous to the enactment, and second, ascertain what was the evil that existed, which the old law did not cover, and third, the remedy the Legislature intends by the enactment, should never be lost sight of in this case.

Now what was the law of this State governing the authority of courts to set aside a decree of divorce previous to the passage of the first enactment of the statutes before quoted?

That question was answered by this court in a divided opinion delivered by GAMBLE, J., in the case of Smith v. Smith, 20 Mo. 166, in the year of 1854. That was a bill of review filed under sections 1, 2, 3, and 4, of article 6, of chapter 137, Revised Statutes 1845, page 851, entitled, "Practice in Chancery," by the plaintiff against the defendant, to set aside a decree of divorce theretofore obtained in the circuit court of the city of St. Louis, by the plaintiff there, the defendant here, against the defendant there, the plaintiff here.

Those sections of the statute read as follows:

"Section 1. When an interlocutory decree, taking a bill as confessed, shall be made, and a final decree entered thereon against any defendant who shall not have been summoned, as required by this act, or who shall not have appeared to the suit, or have been made a party as the representative of one who shall have been summoned or appeared, such final decree may be set aside, if the defendant shall, within the time hereinafter limited, appear, and by bill of review, verified by affidavit, show good cause for setting aside such decree as against equity.

"Sec. 2. If the complainant shall, at any time after such final decree, serve the defendant, within any of the United States or the territories thereof, with notice of the suit and the decree thereon, and such defendant shall not, within one year after such service, bring his bill of review, the court, on proof of the service of such notice, shall make an order that the decree stand absolute.

"Sec. 3. If such bill of review be not filed within five years after such final decree is rendered, the same shall stand absolute, whether notice thereof be given or not.

"Sec. 4. No such decree shall be set aside, unless the bill of review either show that there is no equity in the original bill, or contain such denials or allegations as amount to a defense to the merits, and then, only, on condition that the defendant answer the bill within a reasonable time, to be ordered by the court."

In that case it was held that a decree for divorce was embraced within the meaning of those sections, and that it could be set aside upon the defendants filing a bill of review, within one year after the service of notice of the decree upon him or her, as the case might be, or within five years after the date of the decree, where the notice thereof had not been given as required by said sections. So we see that, at that time and prior thereto, a bill of review would lie against a decree for divorce just the same as it would against any other decree in chancery. But in that case Scott, J., the greatest jurist who ever graced or adorned this court, dissented from the majority therein, and pointed out the evil that would follow such a holding in the following language:

"In my opinion, the provisions of the law regulating chancery practice in relation to bills of review (R. S. 1845, p. 851), do not apply to proceedings in-

stituted to obtain a divorce from the bonds of, matrimony.

"In the first place, if the courts in which such proceedings are begun will execute the law as it is written, a case for a review can scarcely arise. The 8th section of the act concerning divorce and alimony prescribes that, in all cases where the proceedings shall be ex parte, the court shall, before it grants such divorce, require proof of good conduct of the petitioner, and be satisfied that he or she is an innocent and injured party.

"In the same section, it is enacted: 'Nor shall the guilty party be allowed to marry again by reason of such divorce, unless otherwise expressed in the decree of the court.' This provision impliedly gives the innocent party a right to marry immediately, and such has been the universal understanding of the community.

"As the lawmaking power had the subjects of the parties marrying again and ex parte proceedings in its mind, at the same time, and prescribed a period within which the guilty party should not marry, had it been contemplated that the innocent party in ex parte proceedings, could not, with safety, marry again immediately, it would have been so declared.

"Now shall the law give to a man the privilege of marrying, and, after it has been exercised, withdraw it, and thereby make an innocent woman a concubine, and her children illegitimate? A purchaser for a valuable consideration, without notice, is protected by our law, and shall an innocent woman, in a matter that is dearer to her than life itself, be in a worse condition than a mere purchaser of property? How could the law ever justify itself to the children of such a marriage? It is bad enough when, through the frauds, falsehood and imposition of a parent, children are made to hang their heads in shame; but shall the law itself be made the instrument of so great an outrage?

''Considerations of policy unite with the dictates of justice in forbidding any interference with the parties after a divorce has once been granted. The first marriage, in all such cases, without regard to the divorce, has ceased for all purposes for which it was contracted. Its sorrows and disappointments have come and are without remedy. The breaking up of the second marriage may be revenge, but it is no reparation for the evils that have been already done. It is only a multiplication of the distresses and misfortunes of innocent women and children.''

That decision not only announced what the law then was upon this subject, but Judge Scott, in his usual clear, strong and terse language, pointed out the evil that would follow the construction placed upon the act by the majority of the members of the court.

After that opinion was handed down, the first Legislature that convened thereafter, added two new sections 13 and 14, to chapter 55, entitled, ''Divorce and Alimony,'' which were approved November 23, 1855, and they have been revised and incorporated into each and every revision of the statutes from that time to this practically without amendment, and are now sections 2380 and 2381, Revised Statutes 1909.

Judge Scott having seen the evils that would naturally arise from the construction placed upon the act, Governing Practice In Chancery, by the majority of the court, proceeded to point them out and showed that if the law authorized granting of a decree for divorce and permitted the innocent or successful party to remarry, and after having done so, withdraw the marriage by revoking or setting aside the decree, it would thereby make an innocent wife a concubine and her children bastards.

Not only that, he proceeded to show that a purchaser of property for a valuable consideration, without notice, is protected by our law, and asked ''shall an innocent woman, in a matter that is dearer to her

than life itself, be in a worse condition than a mere purchaser of property? How could the law ever justify itself to the children of such a marriage? It is bad enough when, through frauds, falsehood and imposition of a parent, children are made to hang their heads in shame; but should the law itself be made the instrument of so great an outrage?"

Proceeding he said: "Considerations of policy unite with the dictates of justice in forbidding any interference with the parties after a divorce has once been granted. The first marriage, in all such cases, without regard to the divorce, has ceased for all purposes for which it was contracted. Its sorrows and disappointments have come and are without remedy. The breaking up of the second marriage may be revenge, but it is no reparation for the evils that have been already done. It is only a multiplication of the distresses and misfortunes of innocent women and children."

The Legislature is presumed to have known what construction this court placed upon the statutes of the State mentioned in the Smith case, supra, and with that knowledge, proceeded to remedy the evils so clearly pointed out by Judge Scott in that case, by the enactment of sections 13 and 14 before mentioned.

Can there be any doubt in the mind of any fair-minded person, but what the Legislature thereby intended to prohibit the courts in the future from setting aside a decree of divorce in any other manner than that stated therein?

I think not. This is made doubly certain from the fact that the Legislature at the very next session after Judge Scott pointed out the evils that would flow from the decision in that case, enacted the two sections mentioned.

To my mind it is perfectly clear, that the Legislature did not intend that the law, as pointed out by Judge Scott in the Smith case, should longer be held

responsible for the disgrace and injustice which were being perpetrated in its name and under its sanction upon innocent men and women, and their children. In other words, the Legislature clearly intended that when the law divorced a man and wife, and authorized one or both to remarry, no court should have the authority to set aside the decree of divorce and thereby make a concubine of the second wife and bastards of her children.

Judge Scott thought that the principles of public policy united with the dictates of justice would forbid the exercise of any such authority on the part of the courts, even in the absence of the enactment of said sections 13 and 14, and after their enactment, viewed in the light of their history, there can be no logical escape from the conclusion that the Legislature intended thereby to bar all future molestation of such decrees.

And in considering this question it should be borne in mind that the proceeding in the Smith case was a bill of review, seeking to set aside the judgment on the grounds of fraud; and that when the Legislature came to deal with that subject it not only took from the courts the authority to set aside a decree for divorce by a bill of review, but also in express terms prohibited them from doing so by appeal or writ of error, except in the manner stated in said sections 2380 and 2381, *notwithstanding any statute or law to the contrary.*

That being true, it is almost self-evident that the Legislature was not undertaking to remove simply a portion of the means by which a decree of divorce could be set aside and nullified, but it is perfectly apparent from reading those sections, that it was the design of the lawmakers to take from the courts all authority of every kind to set aside, modify and annul any such decree in the future except in the manner therein provided for.

It was wholly immaterial to the Legislature, to the parties interested, and to society by what means the annulment, if authorized, was to be accomplished. The same wrong, injustice and evil would flow from the setting of such a decree aside, by a bill in equity, that would result if set aside by a bill of review, appeal or writ of error.

What sense would there be in the Legislature prohibiting the courts from setting such a decree aside by a direct proceeding, such as by a bill of review, appeal, or writ of error, and recognizing or sanctioning the authority of the courts to do so by a bill in equity? I submit none whatever. The Legislature was not thinking so much of the means by which the mischief pointed out by Judge Scott was being perpetrated, as it was about the abolition of the evils which would naturally flow from reversing, annulling or modifying such decrees

It has been suggested in the opinion of my learned associate, that the argument made by Judge Scott in the Smith case would apply with "greater force in favor of the bigamist." I am unable to agree to that language, for the reason that in the case of the bigamist he alone through his fraud and deception has perpetrated a great wrong upon two or more innocent women, while in the case stated by Judge Scott, the law of the land, through the instrumentality of our courts of justice, has authorized the second marriage, and after it has been solemnized, to nullify it by the same instrumentality, would be nothing more or less than the perpetration of the grossest fraud and deception upon the second wife and her children by the courts of the country, and thereby change her and them from a wife and children to a concubine and bastards.

It is bad enough for a depraved bigamist to so wrong innocent women, but the thought that the courts of our country can be made the means by which a wife may be changed into a concubine, and legitimate

children into bastards, is abhorrent, and repulsive to every instinct of manhood and womanhood. And it is no answer to this suggestion to say that the defendant in this case has not remarried, and therefore he has no wife or children to be wronged by a decision adverse to him. The statute makes no distinction, as to such cases.

If the decree can be set aside where there is no second marriage, then it can be done where a second marriage has been consummated. This is elementary.

This identical question came before this court for determination in the case of Salisbury v. Salisbury, 92 Mo. 683. The facts of that case were substantially the same as are those in the case at bar. There the wife abandoned her husband because of his adultery, and retired to her home in New York. During her absence, the husband procured a divorce from her upon service by publication. She knew nothing of the suit, and never heard of the publication until her return to this State, which was long after the expiration of the term of the court at which the decree for divorce was rendered. Upon learning of the decree, she brought a bill in equity to set it aside upon the ground that it was procured by fraud, etc. The defendant filed a demurrer to the bill, which was by the court sustained, and the plaintiff duly appealed the cause to this court. In that case BLACK, J., in construing sections 2184 and 2185, Revised Statutes 1879, the same as 2380 and 2381, Revised Statutes 1909, used this language:

"By section 2184 appeals in these divorce suits must be allowed at the term at which the judgment or decree appealed from was rendered, or a writ of error must be sued out within sixty days after the rendition of the judgment. Section 2185 is as follows: 'No petition for review of any judgment for divorce, rendered in any case arising under this chapter, shall be allowed, any law or statute to the con-

trary notwithstanding; but there may be a review of any order or judgment touching the alimony and maintenance of the wife, and the care, custody, and maintenance of the children, or any of them, as in other cases.'

"The case of Smith v. Smith, 20 Mo. 167, came before this court in 1854. There the husband had procured a decree of divorce on an order of publication, and had married another woman. The former wife, under sections 1, 2, 3, and 4, article 6, of the chancery code of 1845, filed her petition for review, which was sustained. Scott, J., dissented, and made some strong observations against the right of the court to interfere in such cases as the law in terms allowed the party, at whose instance the decree was procured, to immediately marry again. Following this case, and at the revision of 1855, section 2185 was adopted. This section, it was held in Mansfield v. Mansfield, 26 Mo. 163, did not apply to divorce suits commenced prior to May 1, 1856, and that is all the case decides, for that case came under the law as it previously existed. The policy of the statute is there severely criticised, but it has remained upon the statute books from that day to this, since which time no case, until this one, has come before this court for review, otherwise than on appeal or writ of error.

"The sections of the chancery code of 1845, before mentioned, provided that when a final decree had been rendered against a defendant, who has not been summoned and had not appeared to the suit, such decree might be set aside by bill of review, filed within a designated time, showing that the decree was against equity. These sections are substantially re-enacted in the present practice act (secs. 3684-5-6, R. S. 1879); and it is contended, by counsel for appellant, that the petition for review, which is prohibited, is that only which is provided by the statute, and that a court of equity always has the power, independent of the stat-

ute, to set aside its own decrees for fraud in procur-
ing them. But the statute declares that no petition
for review shall be allowed, any law or statute to the
contrary notwithstanding. It is clear we cannot limit
the prohibition to this statutory review. In chancery
practice bills of review might be brought upon the dis-
covery of new matter; such, for example, as the dis-
covery of a release or receipt, which would change the
merits of the claim upon which the decree was founded.
[Story's Eq. Plead. (9 Ed.), sec. 412.] So a bill to
impeach a decree for fraud is an original bill in the
nature of a bill of review. [Story's Eq. Plead., sec.
426; 2 Dan. Ch. Plead. and Prac., sec. 1584, note 4.]

"The present petition is essentially a bill of re-
view, or, as it is said, in the nature of a bill of review.
Its first and foremost object is to set aside the former
decree, and we cannot escape the conclusion that it is
within the statute, and clearly prohibited. It was the
evident purpose of the Legislature, with the example of
Smith v. Smith, supra, before it, to deny a review in
all cases, whether based upon a charge of fraud or not.
The breaking up of second marriage relations, which
must often result in disaster to innocent persons and
children, doubtless led to the enactment. It would
seem the statute might allow a review of these divorce
decrees rendered on publication of notice, where no
new marriage relation has been contracted, without
violating any principle of sound public policy. But a
criticism of the law avails nothing. The statute is
clear and emphatic. It makes no exception. The courts
are powerless to legislate one into it. It asserts broadly
a principle of public policy which has found recognition
elsewhere. [Parrish v. Parrish, 9 Ohio St. 534; Greene
v. Greene, 2 Gray, 361.] The St. Louis Court of Ap-
peals reached the same conclusion, in a case not mater-
ially different from the one in hand. [Childs v. Childs,
11 Mo. App. 395.]"

That case is on all-fours with the case at bar, and the opinion therein was written by Judge BLACK, one of the strongest jurists who ever sat upon this bench.

There as here, a distinction was tried to be drawn between a bill in equity to set aside the decree and a bill of review.

But Judge BLACK in that case ruled, and correctly so, that under said sections of the statute no such distinction existed between the two, and that within the meaning of those statutes a bill in equity was practically the same as a bill of review.

In the case of Childs v. Childs, 11 Mo. App. 395, a bill in equity was filed in the circuit court of the city of St. Louis, by the plaintiff against the defendant, for the purpose of setting aside a decree of divorce rendered therein where the plaintiff in the last case was the defendant in the first and the plaintiff in the first there was the defendant in the second. The bill stated that the defendant had driven her from his home without good cause or excuse, and refused to live with her, and subsequently abandoned her, and without her knowledge went to St. Louis, where he procured a divorce from her on service by publication. The bill also stated that the facts stated in the petition for divorce were false and fraudulently made, and that she never heard of the divorce suit until long after the rendition of the decree therein. The bill then asked to have the decree of divorce set aside and for naught held, etc. A demurrer was filed to the petition, which was overruled in an opinion written by THAYER, J., then on the circuit bench, but subsequently was one of the judges of the United States Circuit Court of Appeals of this circuit. The plaintiff declines to plead further, and judgment was accordingly rendered in favor of the defendant. After taking the proper preliminary steps, the plaintiff duly appealed the cause to the St. Louis Court of Appeals. The Court of Ap-

peals quoted and adopted the following language from the opinion of Judge THAYER:

"From the facts alleged by the plaintiff, this would appear to be a case where a court of equity ought to interfere and set aside the original decree of divorce, on the ground that the same was procured by fraud; but our statute respecting divorce has apparently barred the door to such relief. Section 2184 of the Revised Statutes of 1879 limits the right of appeal from a decree of divorce to the term at which the decree was rendered, and the right to sue out a writ of error to sixty days after the entry of the decree. Section 2185 (as if to close the way to all redress in matters of divorce, where an appeal is not taken or a writ of error is not sued out in time) provides, that 'no petition for review of any judgment for divorce rendered in any case arising under this chapter shall be allowed, any law or statute to the contrary notwithstanding.'

"This proceeding is clearly a 'petition for review' of the judgment or decree of divorce entered in room No. 1 of this court, on June 18, 1879. [Story's Eq. Pl. (10 Ed.), sec. 426.] This statute went into force in May, 1856, and has been incorporated into each subsequent revision. It is true that the policy of the statute has been criticised by the Supreme Court in the case of Mansfield v. Mansfield, 26 Mo. 163, also in the case of Cole v. Cole, 3 Mo. App. 571; but its applicability to a case like the present has never been authoritatively denied, and indeed it cannot be denied, unless the courts hold that the Legislature did not intend to deny the right to file a petition for review of judgments for divorce, where the same had been obtained by fraud. Such construction of the act in question would incorporate an exception into the statute, which the Legislature have not expressed, and, furthermore, it would practically nullify the law; since the great majority of bills for review of judgments of

any kind, are based upon allegations of fraud in procuring such judgments.

"In the case of Cole v. Cole, the appellate court, on an inspection of the record in the divorce case, were enabled to say that the decree was utterly void for want of jurisdiction appearing on the face of the record. In Mansfield v. Mansfield, the action for divorce was begun before the statute (section 2185) went into force, and the same was not held applicable to the case then under consideration. But in the present case, the original proceeding appears to have been strictly regular. The petition for divorce contains all the jurisdictional averments; service by publication was duly made; and if the decree is to be impeached it must be by evidence *dehors* the record.

"I am of the opinion that the Legislature intended, by section 2185 of the Divorce Act, to prohibit courts from entertaining petitions for review (based upon any ground) after the lapse of the term at which the decree was rendered. They probably foresaw that persons once divorced might contract new relations by marriage with innocent third parties, and that to allow such decrees to be impeached, even for fraud, years or even months after they were rendered would be productive of more harm than good. This ruling will not prevent the courts from setting aside decrees of divorce at any time, under the authority of Cole v. Cole, where the record on its face shows that the court had no jurisdiction over the case, and that the decree is a nullity. But where it is sought to impeach decrees of this character by evidence *aliunde,* and for matter not apparent on the face of the record, the courts, in my opinion, have no power under the statute to proceed."

This court in the case of Mansfield v. Mansfield, 26 Mo. 163, while doubting the wisdom of the statute in an opinion written by NAPTON, J., held that section 14, Revised Statutes 1855, was applicable to all suits for

divorce commenced after May 1, 1856, and thereby recognized the fact that there would be no other method by which a decree for divorce could be reversed, set aside, or modified, except as provided for in said sections 13 and 14, approved November 23, 1855.

The criticism of the statutes referred to in the foregoing cases did not go to the validity or scope of the statutes themselves, but to the wisdom of the policy expressed therein.

The same question was presented to the Kansas City Court of Appeals in the case of Nave v. Nave, 28 Mo. App. 505. ELLISON, J., who wrote the opinion, clearly states the law of the case in the following language.

"Where the court has jurisdiction in divorce proceedings, the statute of this State (sec. 2185) has made the decree absolutely final unless appealed from or corrected on writ of error as provided in section 2184. This statute was probably enacted in view of the division of the Supreme Court in Smith v. Smith, 20 Mo. 166. It was criticised in Mansfield v. Mansfield, 26 Mo. 163, but has never been construed otherwise than as it reads. On the contrary, in Salisbury v. Salisbury, 92 Mo. 683, the section referred to is literally interpreted, and it is held 'to deny a review in all cases, whether based upon a charge of fraud or not.' In view of this decision it is not at all necessary to enter into a discussion of the question. It is so decided and no doubt properly.

"But counsel seek to avoid the force of the statute by denominating the proceeding before us, as a motion, and not a bill or petition for review. The statute is: 'Sec. 2185. No petition for review of any judgment for divorce, rendered in any case arising under this chapter, shall be allowed, any law or statute to the contrary notwithstanding,' etc. It would be a singular holding to say, in the face of this statute, that you could accomplish the same purpose by motion

which you are prohibited from obtaining by petition. A party would thus be enabled, by a change of his pleading, to thwart the object of the law. The purpose of this statute is not to regulate a matter of practice, but it is to prevent the disturbance of a judgment of divorce rendered by a court of competent jurisdiction, under any circumstances, except by appeal or writ of error. Whether we call defendant's paper a motion or a petition, it is certain she is seeking by it to bring about what the law says shall not be done. The judgment of the circuit court was manifestly correct and it is hereby affirmed.''

As previously stated, the divorce business of this country has become a State and a National crime, and thereby thousands, tens of thousands, yea, I dare say, more than fifty thousand decrees are rendered in this country each and every year, and that has been going on for many years; and of course, there reside within this State her proportional part of that number who have married innocent men and women within our borders, who perhaps in many instances never heard of the divorce, especially those granted in courts of other States and foreign countries.

Under that condition of society, should we adopt the easy rule of nullification announced in the opinion written by our learned commissioner, in this case, by repealing the statutes before mentioned, by judicial construction, then the present generation will never see the end of the great injustice, cruel wrongs and inexcusable outrages, which will be inflicted by the great institutions of this State called courts of justice, upon hundreds of innocent men and women and their helpless children. If the public policy announced in those statutes is unwise then the remedy should rest, not with the courts, but with the Legislature, which enacted it.

By a legislative repeal, the act would operate prospectively, and not retrospectively, as will be the

case if repealed by the judiciary, as insisted upon by my learned associate.

Those statutes were designed as enactments of repose, in domestic relations; and now, at this late date, for this court to repeal them after they have been in full force and effect for more than a half a century, would greatly disturb our social relations, and subject every decree rendered for divorce in this State during the fifty years, to attack by a bill in equity, and thereby disturb our social relations, which have rested upon those statutes, to the same extent that a bull would disturb things if turned loose in a china store. No one can tell whom it will affect and when, but that it will be many, first and last, there can be no doubt. Far better that the few who have been injured by the fraudulent divorces go without redress, than to throw down the bars of oppression to the numerous innocent and helpless. In order to protect the few, it is proposed to throw down the bars which protect the many.

That hard cases make bad laws is as true to-day as it was yesterday; and the thought that such a proposition is seriously contemplated, causes me to shudder because of the great wrongs and injustice which are certain to flow therefrom to innocent men, women and children, in the near future.

So viewing this case from whatever standpoint you may, it seems to me that under the law as enacted by the Legislature, and as construed by this court and by the Courts of Appeals for more than a half a century, there is no escape from the conclusion that the trial court properly sustained the demurrer to the petition.

I am therefore of the opinion that the judgment of the circuit court should be affirmed.